UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **EDCV 25-1194 JGB (SHKx)** | Date | December 17, 2025 |
| Title | *Jacob Lee Reeder v. Trans Union LLC, et al.* | | |

| | |
|---|---|
| Present: The Honorable | JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE |

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:** Order (1) GRANTING Defendant Bank of America, N.A.'s Motion to Dismiss (Dkt. No. 41); and (2) VACATING the December 22, 2025 Hearing (IN CHAMBERS)

Before the Court is defendant Bank of America, N.A.'s ("Defendant" or "Bank of America") motion to dismiss the second amended complaint. ("Motion," Dkt. No. 41.) The Court determines this matter is appropriate for resolution without a hearing. See Fed. R. Civ. P. 78; L.R. 7-15. After considering the papers filed in support of and in opposition to the Motion, the Court **GRANTS** the Motion. The Court **VACATES** the December 22, 2025 hearing.

## I.  BACKGROUND

On May 16, 2025, plaintiff Jacob Lee Reeder ("Plaintiff") filed a complaint against defendants Trans Union, LLC ("Trans Union"), Bank of America, N.A., and Does 1-10. (Dkt. No. 1.) Plaintiff filed a First Amended Complaint on August 8, 2025. ("FAC," Dkt. No. 18.) Defendant Trans Union filed an answer to the FAC on August 18, 2025. (Dkt. No. 20.) Subsequently, Defendant Bank of America filed a Motion to Dismiss the First Amended Complaint on August 29, 2025. ("First MTD," Dkt. No. 21.) Plaintiff filed an opposition on September 15, 2025. (Dkt. No. 22.) Defendant filed a reply on September 22, 2025. (Dkt. No. 22.) The Court granted the First MTD on October 10, 2025. ("Order," Dkt. No. 30.)

On October 24, 2025, Plaintiff filed a second amended complaint. ("SAC," Dkt. No. 31.) Plaintiff asserts thirteen causes of action under the Fair Credit Reporting Act ("FCRA"): (1) violation of 15 U.S.C. § 1681c(f); (2) violation of 15 U.S.C. § 1681e(b); (3) violation of 15 U.S.C.

§ 1681g(a); (4) violation of 15 U.S.C. § 1681a(1); (5) violation of 15 U.S.C. § 1681i(a)(2)(A); (6) violation of 15 U.S.C. § 1681i(a)(4); (7) violation of 15 U.S.C. § 1681i(a)(5)(A); (8) violation of 15 U.S.C. § 1681i(a)(7); (9) violation of 15 U.S.C. §§ 1681i(a)(6)(B)(iv) and § 1681i(b); (10) violation of 15 U.S.C. § 1681s-2(b)(1)(A); (11) violation of 15 U.S.C. § 1681s-2(b); (12) violation of 15 U.S.C. § 1681s-2(b)(1)(B); and (13) violation of 15 U.S.C. §§ 1681s-2(b)(1)(C) and (D). (SAC ¶¶ 159-215.)  Additionally, Plaintiff alleges two causes of action under the California Consumer Credit Reporting Agencies Act ("CCRAA"): (14) violation of Cal. Civ. Code §§ 1785.10 and 1785.15; and (15) violation of Cal. Civ. Code § 1785.25(a).  (Id. ¶¶ 162-169.)  Defendant Trans Union filed an answer to the SAC on October 27, 2025.  (Dkt. No. 32.)  On November 7, 2025, Defendant Bank of America filed the Motion.  (Motion.)  Plaintiff opposed on November 24, 2025.  ("Opposition," Dkt. No. 42.)  On December 1, 2025, Defendant Bank of America filed a reply to the Opposition.  ("Reply," Dkt. No. 44.)

## II. FACTUAL ALLEGATIONS

Plaintiff alleges the following facts, which are assumed to be true for the purposes of this Motion.  See Am. Fam. Ass'n, Inc. v. City & Cnty. of San Francisco, 277 F.3d 1114, 1120 (9th Cir. 2002).

Plaintiff is a military veteran residing in San Bernardino County, California.  (SAC ¶¶ 22-24.)  Defendant conducts business in California.  (Id. ¶ 24.)  Plaintiff noticed incomplete and inaccurate information on his Trans Union credit report, including errors pertaining to his two Bank of America accounts.  (Id. ¶¶ 42, 103-09.)  Plaintiff disputed several of the accounts on his Trans Union credit report on November 13, 2024, March 19, 2025, and April 24, 2025.  (Id. ¶¶ 40-61.)  On March 25, 2025, defendant Trans Union asked Plaintiff to confirm whether he intended to send the March 19, 2025 dispute to Trans Union.  (Id. ¶ 60.)  Plaintiff responded on April 24, 2025 confirming that he did.  (Id.)  Subsequently, Trans Union acknowledged receipt of the April 24, 2025 dispute on May 1, 2025 and informed Plaintiff that they contacted Plaintiff's creditors, including Defendant Bank of America, on May 4, 2025.  (Id. ¶¶ 68-71.)  Correspondingly, Trans Union transmitted an Automated Consumer Dispute Verification (ACDV) through the e-OSCAR system to Bank of America.  (Id. ¶¶ 70-71.)  On May 21, 2025, defendant Trans Union informed Plaintiff that the investigation of Plaintiff's dispute was complete; however, none of the disputed accounts in the credit file excerpt provided by Trans Union indicated that they had been disputed.  (Id. ¶ 72.)

Trans Union received Plaintiff's fourth dispute on June 16, 2025.  (Id. ¶ 73.)  Plaintiff requested a description of the investigation procedure and the addition of a 100-word statement, and highlighted approximately 600 errors across around 10 accounts, including two accounts with Bank of America.  (Id. ¶ 74.)  On July 2, 2025, Trans Union notified Plaintiff that Trans Union had received Plaintiff's dispute five days prior and was awaiting a response from Plaintiff's creditors.  (Id. ¶ 76.)  Trans Union provided a similar update on July 4, 2025.  (Id. ¶ 77.)  Correspondingly, Bank of America received an ACDV sometime between June 16, 2025 and July 4, 2025.  (Id. ¶ 78.)  On July 29, 2025, defendant Trans Union again informed Plaintiff that its investigation was complete, yet none of the disputed accounts in the credit file excerpt indicated

they had been disputed. (Id. ¶ 80.) Plaintiff reviewed his credit report and found over 900 errors that had not been corrected, including over 100 on two Bank of America accounts. (Id. ¶ 82.) Plaintiff also filed disputes on November 13, 2025 and March 19, 2025. (Id. ¶ 83.)

Bank of America did not contact Plaintiff to obtain any documents identified in the ACDVs and did not review the document referenced in the ACDVs. (Id. ¶¶ 85-86.) Bank of America also failed to review account-level source data to validate the disputed fields and did not compare the disputed information to underlying payment records. (Id. ¶¶ 87-88.) Bank of America merely matched the ACDV to its prior reporting and responded "verified." (Id. ¶ 89.) Bank of America did not conduct any inquiries outside its own system and its investigation did not involve a human being. (Id. ¶¶ 91-92.) In its ACDV responses, Bank of America did not identify the incomplete or inaccurate fields or report the accounts as disputed. (Id. ¶¶ 93-94.) Bank of America reported Plaintiff's accounts as "verified," continued to furnish monthly updates that omitted any indication the accounts were disputed, and continued to furnish information it knew or should have known was inaccurate. (Id. ¶¶ 97-98.) Bank of America did not send any corrections or deletion to other consumer reporting agencies after receiving the ACDVs. (Id. ¶¶ 98-99.)

Trans Union forwarded Plaintiff's disputes to Defendant and did so within the timeframe prescribed by the FCRA. (Id. ¶¶ 115.) Trans Union and Bank of America did not perform a "reasonable investigation." (Id. ¶¶ 132-33.) A reasonable, or even negligent, investigation may have resulted in the correction or deletion of Plaintiff's disputed accounts from his credit report. (Id. ¶¶ 134-136.) Instead, Trans Union and defendant have a "policy, procedure, practice, custom, and habit of recklessly and intentionally refusing to investigate consumer disputes." (Id. ¶¶ 137-38.) Plaintiff exercised his right to request a description of Trans Union's procedure to determine the accuracy and completeness of the information in Plaintiff's credit report. (Id. ¶ 139.) Trans Union did not provide Plaintiff with the requested description within 15 days of receiving the request. (Id. at 140.) Because Trans Union failed to maintain and follow reasonable procedures to assure the accuracy of Plaintiff's credit reports, incomplete and inaccurate information as to Plaintiff's accounts remains on his credit report. (Id. ¶ 143.) Plaintiff additionally asked Trans Union to include Plaintiff's 100-word statement in Plaintiff's credit report with respect to each of the disputed accounts pursuant to the FCRA. (Id. ¶ 144.) Trans Union failed to do so. (Id. ¶ 145.)

Trans Union is aware that "furnishers, or "subscribers" of credit information, including Defendant, unreliably report consumer credit information. (Id. ¶¶ 23-24, 146-47.) Defendant transmitted consumer reports with inaccurate or incomplete information related to Plaintiff's accounts within the five years previous to the filing of the Complaint. (Id. ¶ 148.) Plaintiff requested a full credit disclosure from Trans Union pursuant to the FCRA, which Trans Union failed to provide. (Id. ¶ 149.) The information Trans Union provided contained account numbers that were omitted or partially obscured, which prevents Plaintiff from verifying the accuracy of his credit report. (Id. ¶ 151.) However, the Federal Trade Commission released an advisory opinion providing that "scramble[d] or truncate[d] account numbers" violate the FCRA and furnishers provide complete account numbers to Trans Union. (Id. ¶¶ 152-53.) The

information Trans Union provided to Plaintiff did not contain the date of the first delinquency for each account preventing Plaintiff from determining when "derogatory credit information will become obsolete." (Id. ¶ 154.)  However, furnishers provide such dates to Trans Union.  (Id. ¶ 155.)  Complaints with the Consumer Financial Protection Bureau and lawsuits are regularly filed against Trans Union for this behavior.  (Id. ¶ 156.)

### III.   LEGAL STANDARD

#### A.   Rule 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)")[1], a party may bring a motion to dismiss for failure to state a claim upon which relief can be granted.  Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires a "short and plain statement of the claim showing that a pleader is entitled to relief," in order to give the defendant "fair notice of what the claim is and the grounds upon which it rests."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007); see Ileto v. Glock Inc., 349 F.3d 1191, 1199-1200 (9th Cir. 2003).  When evaluating a Rule 12(b)(6) motion, a court must accept all material allegations in the complaint—as well as any reasonable inferences to be drawn from them—as true and construe them in the light most favorable to the non-moving party.  See Doe v. United States, 419 F.3d 1058, 1062 (9th Cir. 2005); ARC Ecology v. U.S. Dep't of Air Force, 411 F.3d 1092, 1096 (9th Cir. 2005); Moyo v. Gomez, 32 F.3d 1382, 1384 (9th Cir. 1994).  Courts are not required, however, "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  In re Gilead Scis. Sec. Litig., 536 F.2d 1049, 1055 (9th Cir. 2008) (internal citation and quotation omitted).  Courts also need not accept as true allegations that contradict facts which may be judicially noticed.  See Mullis v. U.S. Bankr. Court, 828 F.2d 1385, 1388 (9th Cir. 1987).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Twombly, 550 U.S. at 555 (citations omitted).  Rather, the allegations in the complaint "must be enough to raise a right to relief above the speculative level."  Id.

To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."  Id. at 570; Ashcroft v. Iqbal, 556 U.S. 662 (2009).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.' "  Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 556).  The Ninth Circuit has clarified that (1) a complaint must "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively,"

---

[1] All subsequent references to "Rule" refer to the Federal Rules of Civil Procedure, unless otherwise noted.

and (2) "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).

**B.    Rule 15**

Rule 15 provides that leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). The Ninth Circuit has held that "'[t]his policy is to be applied with extreme liberality.'" Eminence Cap., L.L.C. v. Aspeon, Inc., 316 F.3d 1048, 1051 (9th Cir. 2003) (quoting Owens v. Kaiser Found. Health Plan, Inc., 244 F.3d 708, 712 (9th Cir. 2001)). Generally, a "district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by allegation of other facts." Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (citation omitted).

## IV.    DISCUSSION

Defendant Bank of America moves to dismiss the SAC for failure to state a claim under Rule 12(b)(6). (See Motion to Dismiss at 1.) Defendant argues that the allegations Plaintiff added in the SAC constitute "unwarranted speculations and conclusions that cannot possible be grounded in fact or personal knowledge," that Plaintiff's FCRA claims fail as a matter of law, and that, as a result, Plaintiff's CCRAA claim fails as well. (See Mot.) Of Plaintiff's fifteen counts, Plaintiff raises four counts against Defendant Bank of America: (10) violation of 15 U.S.C. § 1681s-2(b)(1)(A); (11) violation of 15 U.S.C. § 1681s-2(b); (12) violation of 15 U.S.C. § 1681s-2(b)(1)(B); (13) violation of 15 U.S.C. §§ 1681s-2(b)(1)(C) and (D); and (15) violation of Cal. Civ. Code § 1785.25(a). (SAC ¶¶ 186-207, 211-215.)

**A. FCRA Claims**

Congress enacted the FCRA in 1970 "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." Gorman v. Wolpoff & Abramson, LLP, 584 F.3d 1147, 1153 (9th Cir. 2009) (citing Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47, 52 (2007)). 15 U.S.C. § 1681s-2(b) imposes duties on furnishers after receiving notice of a dispute on the "completeness or accuracy" of information provided to a consumer reporting agency. Furnishers must conduct an investigation of the disputed information, review all relevant information provided by the consumer reporting agency, report the results of the investigation to the consumer reporting agency, and report any incomplete or inaccurate information discovered in the investigation to "all other consumer reporting agencies." 15 U.S.C. § 1681s-2(b)(1)(A)-(D).

To state a claim under the FCRA, "a plaintiff must show that: (1) he found an inaccuracy in his credit report; (2) he notified a credit reporting agency; (3) the credit reporting agency notified the furnisher of the information about the dispute; and (4) the furnisher failed to investigate the inaccuracies or otherwise failed to comply with the requirements of 15 U.S.C. § 1681s–2(b)(1)(A)–(E)." Biggs v. Experian Info. Sols., Inc., 209 F. Supp. 3d 1142, 1144 (N.D. Cal.

2016) (citing Corns v. Residential Credit Solutions, Inc., No.: 2:15-cv-1233-GMN-VCF, 2016 U.S. Dist. LEXIS 27864, at *4 (D.Nev. Mar. 3, 2016)).

"For the first element, a complaint's allegations must dispute *facts* underlying a purported inaccuracy." Id. Plaintiff alleges a variety of inaccuracies in the SAC, including incorrect balances, incorrect dates, and incorrect data as to Plaintiff's two accounts with Bank of America. (SAC ¶¶ 103-109.) Defendant does not contest that Plaintiff satisfies this first element. (See Mot.) Accordingly, the Court finds Plaintiff has satisfied this first element.

For the second element, Plaintiff "must show that . . . he notified a credit reporting agency." Biggs, 209 F. Supp. 3d at 1144. Plaintiff alleges that he submitted several disputes to Trans Union. (SAC ¶¶ 58-59, 61, 73.) Defendant does not contest that Plaintiff satisfies this second element. (See Mot.) Accordingly, the Court finds Plaintiff has satisfied this second element.

For the third element, Plaintiff "must show that . . . the credit reporting agency notified the furnisher of the information about the dispute." Biggs, 209 F. Supp. 3d at 1144. In this Court's previous Order, it explained that it was "unable to determine based on the allegations whether Defendant received a notice of dispute." (Order at 5.) Plaintiff now alleges that Trans Union twice notified Plaintiff that it had contacted Plaintiff's creditors. (SAC ¶¶ 69-70, 76-78.) Defendant does not contest that Plaintiff satisfies this third element. (See Mot.) Accordingly, the Court finds Plaintiff has satisfied this third element.

For the fourth element, Plaintiff must allege that "the furnisher failed to investigate the inaccuracies or otherwise failed to comply with the requirements of 15 U.S.C. § 1681s-2(b)(1)(A)-(E)." Biggs, 209 F. Supp. 3d at 1144. This fourth element forms the crux of Defendant's argument in the Motion as Defendant contends that "Plaintiff relies on unsupported inferences and legal conclusions to support his position, . . . not on fact or personal knowledge." (Mot. at 8.) While the Court agrees that some of Plaintiff's new allegations constitute inferences that are not supported by fact, the Court finds that Plaintiff's complaint contains "sufficient factual matter" to demonstrate at this stage that Bank of America failed to investigate the inaccuracies Plaintiff identified. Iqbal, 556 U.S. at 662. Trans Union informed Plaintiff in early May 2025 that it had forwarded Plaintiff's dispute to Bank of America. (SAC ¶ 69.) Subsequently, Trans Union informed Plaintiff that the investigation was complete and provided him a credit file excerpt; however, Plaintiff's two Bank of America accounts did not show they were disputed in that excerpt. (Id. ¶ 72.) Plaintiff submitted a fourth dispute in June 2025 because he continued to find errors in his Bank of America accounts. (Id. ¶ 74.) Trans Union again informed Plaintiff that it had received his dispute, but it was waiting for a response from his creditors. (Id. ¶¶ 76-77.) At the end of July, Trans Union again informed Plaintiff that its investigation of the dispute was complete and provided him a credit file excerpt. (Id. ¶ 80.) That excerpt still failed to show that Plaintiff's Bank of America accounts were disputed, and Plaintiff continued to find errors across his two Bank of America accounts. (Id. ¶ 82.) Based on those allegations, it is a fair inference that Bank of America "failed to investigate the inaccuracies or otherwise failed to comply with the requirements of 15 U.S.C. § 1681s-2(b)(1)(A)-(E)."

Biggs, 209 F. Supp. 3d at 1144.  Accordingly, the Court finds Plaintiff has satisfied the fourth element.

Even assuming that a plaintiff has sufficiently alleged that a defendant has failed to comply with 15 U.S.C. § 1681s-2(b)(1)(A)-(D), the FCRA only imposes liability for negligent or willful violations of the statute.  Moran v. Screening Pros, LLC, 25 F.4th 722, 728 (9th Cir. 2022).  A negligent violation arises when a defendant "act[s] pursuant to an objectively unreasonable interpretation of the statute."  Id. (Marino v. Ocwen Loan Servicing LLC, 978 F.3d 669, 673-74 (9th Cir. 2020)).  To prove a willful violation of the FCRA, a plaintiff must show "a knowing or reckless violation of a standard," or, alternatively," that "defendant's interpretation was objectively unreasonable, but also that the defendant ran a risk of violating the statute that was substantially greater than the risk associated with a reading that was merely careless."  Id., 25 F.4th at 728-29 (citing Marino, 978 F.3d at 673.)  Although Plaintiff need not prove a negligent or willful violation at this stage, he must allege enough facts to "raise a right to relief above the speculative level."  Twombly, 550 U.S. at 555.  The Court finds that Plaintiff has met his burden.  Plaintiff alleges multiple errors as to his accounts with Bank of America.  (SAC ¶¶ 103-109.)  As discussed above, Plaintiff reported these errors through multiple disputes to Trans Union, which were reported to Bank of America, and the lack of resolution of those errors or any indication that those Bank of America accounts were disputed is sufficient to "nudge[]" his claim "across the line from conceivable to plausible."  Twombly, 550 U.S. at 544.

Finally, Defendant argues that Plaintiff fails to sufficiently allege damages because he merely provides a "laundry list of categories of damages."  (Mot. at 10 (citing Dewi v. Wells Fargo Bank, No. CV 12-2891 ABC SHX, 2012 WL 10423239, at *9 (C.D. Cal. Aug. 8, 2012)).)  Defendant argues that the list of damages in the SAC are "a recitation of the types of damages Plaintiff suffered, . . . [w]hich is common for a complaint."  (Opp. at 15.)  Under the FCRA, a "private plaintiff who alleges a negligent violation of the FCRA may recover actual damages."  Warr v. Cent. Garden & Pet Co., No. 20-CV-09405-JST, 2021 WL 6275013, at *10 (N.D. Cal. Sept. 21, 2021).  The term "actual damages" includes "recovery for emotional distress and humiliation."  Guimond v. Trans Union Credit Info. Co., 45 F.3d 1329, 1333 (9th Cir. 1995).  A plaintiff who alleges a willful violation of the FRCA may recover "[s]tatutory and punitive damages."  Syed v. M-I, LLC, 853 F.3d 492, 503 (9th Cir. 2017).

Plaintiff alleges that he "has suffered damage by loss of credit, loss of ability to purchase and benefit from credit, increased costs for credit, invasion of privacy, mental and emotional pain, anguish, humiliation and embarrassment, as well as physical manifestations of these emotional states."  (FAC ¶ 158.)  Nowhere in the SAC does Plaintiff provide any facts whatsoever to support any of these damages.  "Plaintiff would need to plead specific allegations regarding any actual damages that she incurred due to [Defendant's] alleged violation."  Messano v. Experian Info. Sols., Inc., 251 F. Supp. 3d 1309, 1316 (N.D. Cal. 2017).  Because Plaintiff fails to allege the damages he has faced as a result of Bank of America's alleged conduct, the Court **GRANTS** the Motion.

//

### C.  Count XV – Cal Civ. Code § 1785.25(a)

As before, the Court declines to consider the sole remaining state claim as to Defendant Bank of America at this time.  See Religious Tech. Ctr. v. Wollersheim, 971 F.2d 364, 367–68 (9th Cir. 1992) (citing Jones v. Community Redev. Agency, 733 F.2d 646, 651 (9th Cir.1984)) ("When federal claims are dismissed before trial . . .pendant state claims also should be dismissed.")

### D.  Leave to Amend

Defendant requests that the Court grant the Motion with prejudice.  (Mot. at 12.) However, leave to amend under Rule 15 should be granted with "extreme liberality."  Eminence Cap., L.L.C., 316 F.3d at 1051.  Accordingly, the Court **GRANTS** leave to amend within 7 days. Plaintiffs shall file an amended complaint, if any, by **December 24, 2025**.  Plaintiff is further instructed to include as an exhibit a redlined version of the amended complaint reflecting all changes made.  Failure to comply with this order could result in sanctions, including dismissal of the action with prejudice.

## V.  CONCLUSION

For the above reasons, the Court **GRANTS** the Motion.  Counts X, XI, XII, and XIII are **DISMISSED WITH LEAVE TO AMEND**.  The Court **VACATES** the December 22, 2025 hearing.  Plaintiffs shall file an amended complaint, if any, by **December 24, 2025.**

**IT IS SO ORDERED.**